Hay, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
*71 This is a suit brought by a letter carrier in the City Delivery Service in the post office at Chicago, Ill., to recover a salary at the rate of $1,200 a year, which he claims was illegally reduced to a salary of $1,000 a year by an order of the Postmaster General. The amount for which he sues is $225, the amount deducted from his salary of $1,200 for the period from July 16, 1915, to September 1, 1916.
On February 4,1915, the First Assistant Postmaster General issued a letter to the postmasters of the cities of the country, as follows:
u. The work of carriers collecting mail is less exacting and important than- that performed by carriers in effecting deliveries of mail. It is therefore desired that in the future the maximum salary of letter carriers assigned to the collection of mail be fixed at $1,000 per annum. You will proceed in accordance with this policy to make the necessary assignments of the higher salaried carriers to delivery work, and you will not in the future give to any letter carrier receiving a salary in excess of $1,000 an assignment as collector.
“ Carriers now acting as collectors and receiving salaries in excess of $1,000 per annum who are incompetent to perform delivery service should be reduced in salary. Proper notice should be given to them in conformity with the Postal Laws and Regulations, unless by explaining to them the manifest difference in importance and responsibility of the two assignments they voluntarily submit written consent to salary reductions.
“ It is desired that you charge yourself with an immediate application to this matter and make the assignments as rapidly as possible from time to time, so that by July 1, 1915, your collection and delivery service may be adjusted to the basis indicated. In applying this regulation a carrier who is performing both collection and delivery service should be regarded as a collector or carrier in accordance with the preponderance of work done in either line.”
It will be seen in this letter that the postmasters were directed to take steps which would result in reducing the salaries of certain letter carriers, among whom was the plaintiff. On the 29th day of March, 1915, another letter was written by the First Assistant Postmaster General *72 directing that the instructions contained in the letter of February 4,1915, be carried out. This letter was as follows:
“Referring to the letter of this bureau of February 4, 1915, relative to the readjustment of the assignment of letter carriers to collection duty, I desire to call your attention to the resolution of Congress making appropriations for the Postal Service for the fiscal year ending June 30,1916, which provides that letter carriers assigned to collection service whose salaries have been reduced during the past fiscal year through no delinquency or misconduct on their part shall be restored to their former grades.
“In all cases where the carriers are inefficient by reason of being incompetent to perform the work required on an average delivery route they should be given notice in writing-setting forth their delinquencies and giving them an opportunity to show cause why they should not be reduced.
“ The department desires that the instructions of the letter of February 4, 1915, shall be carried out by a reassignment of carriers, placing carriers of the lower grades on collection duty and assigning carriers of the higher grades now on collection duty to delivery duty as far as may be practicable.”
This brings us to consider whether the Postmaster General was authorized under the law to reduce the salaries of letter carriers in the City Delivery Service.
Salaries of carriers in the City Delivery Service are fixed by the act approved March 2, 1907, 34 Stat., 1206, 1207. That act provides that carriers in that service shall be divided into six grades, and the salary for each of these grades is provided for in the act, and fixed at $600, $800, $900, $1,000, $1,100, and $1,200, respectively. This act also provided the manner in which carriers could be promoted from one grade to another, and also how a carrier could be reduced from a higher to a lower grade. The last-named provision was as follows: “ The Post Office Department may reduce a clerk or carrier from a higher to a lower grade whenever his efficiency falls below a fair standard or whenever necessary for purposes of discipline.” The act approved August 24, 1912, 37 Stat., 539, 555, makes the following proviso:
“ Sec. 6. That no person in the classified civil service of the United States shall be removed therefrom except for *73 such cause as will promote the efficiency of said service and for reasons given in writing, and the person whose removal is sought shall have notice of the same and of any charges preferred against him, and be furnished with a copy thereof, and also be allowed a reasonable time for personally answering the same in writing; and affidavits in support thereof; but no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal; and copies of charges, notice of hearing, answer, reasons for removal, and of the order of removal shall be made a part of the records of the proper department or office, as shall also the reasons for reduction in rank or compensation; and copies of the same shall be furnished to the person affected upon request, and the Civil Service Commission also shall, upon request, be furnished copies of the same.”
So that it appears from these provisions of the law the only way the Postmaster General could legally reduce a carrier from a higher to a lower grade, and thereby reduce his salary, was to proceed in the manner set forth in the statutes above referred to.
It appears from the evidence in this case that the plaintiff had been a carrier at the Chicago post office for about twelve' years; that by successive promotions he had been promoted to the $1,200 grade, and that he had been in that grade for seven years, during which time his ratings were above 90. It also appears that during all of his service as carrier he was performing that part of the duty of a carrier which consisted in collecting mail. It also appears that in Chicago, and indeed in all the cities of the country, a part of the carrier force collect mail and a part deliver mail. And up to the time of the issuing of the circular of February 4, 1915, no distinction had ever been made in salary between carriers collecting mail and those delivering mail. The charge served upon the plaintiff was that “ Carrier Spanhake is inefficient by reason of being incompetent to perform service on an average delivery route, being seriously handicapped by poor eyesight,” and he was given five days in which to answer the charge. He did not answer it and was reduced from $1,200 to $1,000 per annum, effective July 16, 1915. Before this charge was made his efficiency rating was 96 %. This rating was reduced to 58 % even before he was given a *74 test as to Ms fitness to deliver mail. He was not found inefficient in the manner contemplated by law. If his had been an isolated case something might be said in favor of the action of the Postmaster General. But this plaintiff and two hundred other carriers at the Chicago office who had been employed as carriers to collect mail, and who had never performed any other duty as carriers, and who had been rated upon the manner in which they performed that duty all through the period of their employment, were reduced in salary, not because they were not efficient in the performance of their duty as carriers, but because they collected mail instead of delivering it. The charge, therefore, was not really a charge of inefficiency within the meaning of the acts of 1907 and 1912, but a determination upon the part of the post-office authorities to set up a distinction between carriers, a distinction never contemplated in the law and never acted upon during the many years during which this service had been conducted by the Government. Before this distinction was attempted ratings prepared for carriers who collected mail were based upon their ability to perform that service, and ratings for carriers who delivered mail were based upon their ability to perform that service.; promotions had been for years based upon the ratings so determined.
The rating of 58% given to the plaintiff was entirely arbitrary and based upon no legal nor even fair basis of examination. The official rating slip giving him the mark of 58 was dated and signed May 20, 1915, when he was not actually tested on a delivery route until May 25. All the carriers at this post office, with the exception of three or four, who did collecting work, were given the same rating, 58%, just two points below the passing mark of 60, thus enabling the Post Office Department to i*educe the salary of all those carriers doing collecting work who were getting $1,200 a year. There is nothing in the law of 1907 which conferred upon the Postmaster General the power of reducing the salaries of letter carriers because they were doing collecting work. It is plain that the inefficiency of individual carriers was not aimed at by the Post Office Department. What was intended was that all carriers who were doing collecting work were to be reduced in salary. *75 The letter of the First Assistant Postmaster General says so in terms: “It is therefore desired that in the future the maximum salary of letter carriers assigned to the collection of mail be fixed at $1,000 per annum i|: * *, and you will not in future give to any letter carrier receiving a salary in excess of $1,000 an assignment as collector.” Here is an attempt to demote all carriers who were collecting mail and to fix the salaries of such carriers; it was not within the power of the Postmaster General to fix the salaries of carriers ; this had been done by Congress in the act of March 2, 1907. The Postmaster General could not by a regulation or order nullify an act of Congress. We think the order was illegal, and that the reduction of the salary of the plaintiff in the manner attempted was not within the power of the Postmaster General.
The departmental policy attempted to be inaugurated by the letter of the Fii’st Assistant Postmaster General of February 4, 1915, was, as set out above, in conflict with the legislative policy as well as the departmental policy which had been followed up to that time.
The legislative policy was again asserted. Just as soon as Congress was informed that the Post Office Department proposed to reduce the salaries of carriers performing collection service, Congress, on March 4, 1915, in adopting a joint resolution mailing appropriations for the service of the Post Office Department for the fiscal year ending June 30, 1916, incorporated therein the following proviso:
“And provided further, That letter carriers assigned to collection service, who were promoted to the higher grades in accordance with the classification act approved March 2, 1907, and whose salaries have been reduced during the past year, through no delinquency or charges of misconduct on their part, shall be restored to their former grades.” (38 Stat., 1227.)
Neither the salary of the plaintiff nor that of any other carrier had been reduced prior to the passage of this joint resolution, and the evident purpose of this provision was to notify the Post Office Department that Congress did not recognize any distinction in the law between carriers assigned to collection service and those assigned to delivery service. If it did not have this purpose, then the passage of *76 the joint resolution meant nothing. And it may be further pointed out that the delinquency mentioned in the joint resolution, referred to the delinquency or inefficiency of carriers assigned to collection service, and if such carriers were performing their duties as collectors acceptably they would not be liable to a charge of delinquency because they might not be able to discharge the duties of deliverers of mail. Their efficiency as collectors did not fall below a fair standard. Indeed it was not pretended that it did, and if it did not there was no legal ground for a reduction in salary under the act of 1907, above referred to. There was therefore no power in the Post Office Department to reduce the salary of a letter carrier because of his inability to perform any but collection duty. And Congress by the joint resolution of March 4, 1915, emphasized this want of power in the department. But the department ignoring the action of Congress, on March 29, 1915, by another circular (set out above), addressed to the postmasters of the cities of the country renewed its order to reduce the salaries of letter carriers assigned to collection service. By this action the department practically set aside the law so recently passed by Congress, for it can not be said that the law meant only that carriers who had been reduced in salary should be restored. Congress must have intended, if it intended anything, to declare a legislative policy which it was incumbent upon the department to follow. Its circular of March 29, 1915, in effect proposed to reduce the salaries of carriers whose salaries Congress had just restored, and to continue a policy which Congress had declared against. In pursuance of this circular or order of March 29, 1915, the salary of the plaintiff, as well as the salaries of many other letter carriers assigned to collection service throughout the country, was reduced.
On the 28th day of July, 1916, Congress again legislated upon this subject, and reiterated its policy set out so fully in the joint resolution of March 4,1915. In the act making appropriations for the service of the Post Office Department for the fiscal year ending June 30, 1917, the following proviso appears:
*77 “ Provided further, That hereafter there shall be no distinction in salary made between letter carriers assigned to collection duty and letter carriers assigned to delivery duty: And provided further, That letter carriers whose salaries have been reduced as the result of any order of the Post Office Department, making the maximum salary $1,000 to be paid letter carriers assigned to collection duty, shall be restored to their former grades.” (39 Stat., 417.)
This act was plainly a legislative construction of the joint resolution of 1915, and was made necessary by the failure of the Post Office Department to give heed to the meaning and intent of that joint resolution. The mandate of the legislature contained in the joint resolution was plain and not to be misunderstood, and no further legislation should have been necessary. In pursuance of the act of July 28,1916, the plaintiff was restored to his former grade and to his salary of $1,200 a year.
As set out above, we are of opinion that the Post Office Department had no power to reduce the salary of the plaintiff, as it was reduced, under the acts of 1907 and 1912. Also the legislative interpretation of those acts by joint resolution of March 4, 1915, was binding upon the department. Any order or regulation of the department in conflict with the law thus interpreted and announced was of no effect, and could not operate legally to reduce the salary of the plaintiff.
The plaintiff is entitled to recover the amount withheld from him by the order of the department, and judgment will be entered for $225.
Geaham, Judge, DowNey, Judge, Booth, Judgey and Campbell, Chief Justice, concur.